## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **DESIREE V. MAYES,** *pro se* | * |
| | * |
| Plaintiff | * |
| | * |
| | * **Civil No.  PJM 13-3770** |
| v. | * |
| | * |
| **PRINCE GEORGE'S COUNTY** | * |
| **EDUCATORS' ASSOCIATION** | * |
| | * |
| Defendant | * |

### <u>MEMORANDUM OPINION</u>

Desiree V. Mayes, *pro se*, has sued the Prince George's County Educators' Association

("the Union") with respect to its handling of grievances relating to her employment with the

Board of Education of Prince George's County ("the Board").  She has asserted four causes of

action: Breach of contract in violation of 41 U.S.C. § 6503 (Count I), Discrimination in violation

of 42 U.S.C. § 1981 (Count II), Violation of 42 U.S.C. § 1983 Due Process Clause/Equal

Protection Clause (Count III), and Breach of Duty of Fair Representation (Count IV).  She also

requests a preliminary injunction.  The Union has filed a Motion to Dismiss all counts for failure

to state a claim. For the reasons that follow, the Court **GRANTS WITH PREJUDICE** the

Union's motion.

### I.

### Procedural Background

The Court considers the Union's Motion to Dismiss Mayes's claims as set forth in her

Second Amended Complaint.

The procedural background of the case is as follows:

1

On July 15, 2013, Mayes filed a Complaint against the Board in this Court alleging employment discrimination and retaliation under Title IX of the Education Amendments Act of 1972 and Title VI of the Civil Rights Act of 1964, as well as claims of negligent supervision and retention and intentional infliction of emotional distress. That case was assigned to Judge J. Frederick Motz of the Northern Division of the Court. On October 18, 2013 the Board filed a motion to dismiss that case, which Judge Motz eventually granted, ECF No JFM 13-3086.

Mayes then brought a second civil action against the Board, this time adding the Union as a defendant, the case presently before this member of the Court. The Complaint proceeded in seven counts, including alleged violations of 20 U.S.C. § 1682 ("Title IX") (Counts I, II, and IV), 42 U.S.C. §1981 ("§1981")(Count V), the Family and Medical Leave Act of 1993 ("FMLA")(Count VI), the Age Discrimination in Employment Act of 1967 ("ADEA")(Count VII), and a state law breach of contract claim (Count III). All seven counts were alleged against the Board. The only claim expressly designated as against the Union was Count V, the §1981 claim. However, there was sufficient ambiguity in Mayes's complaint to make it uncertain if she intended to allege the remaining counts against the Union as well.

Both the Board and the Union moved to dismiss Mayes's Complaint. On August 11, 2014, the Court granted the Board's Motion to Dismiss with Prejudice as to all counts against it based on claim preclusion. ECF No. 29. The Court granted the Union's Motion to Dismiss with Prejudice as to Counts I, II, IV, VI, VII against it because those claims could only be brought against her employer, not the Union, ECF No. 28. However, the Court dismissed Claim III and Claim V against the Union without prejudice, and granted Mayes leave to submit a new Second Amended Complaint within 60 days, ECF No. 28.

On September 11, 2014, Mayes filed a Second Amended Complaint, asserting four claims against the Union: Breach of contract in violation of 41 U.S.C. § 6503 (Count I), Discrimination in violation of 42 U.S.C. § 1981 (Count II), Violation of 42 U.S.C. § 1983 Due Process Clause/Equal Protection Clause (Count III), and Breach of Duty of Fair Representation (Count IV). She also requested a preliminary injunction. The Union has again moved to dismiss for failure to state a claim, under Federal Rule of Civil Procedure 12(b)(6).

## II.

### Factual Background

The Second Amended Complaint, as with the previous complaints, is largely incoherent and devoid of material factual allegations. Despite the deficiencies in the pleading, the Court has pieced together what appears to be the gist of Mayes's allegations.

Mayes is a 59 year old African American woman who began employment as a guidance counselor at Suitland High School in Prince George's County on August 14, 2006. Second Amended Compl. ("SAC") ¶ 3, ECF No. 30. She was a member of the Prince George's County Educators' Association ("the Union"). *Id.* ¶ 8. She says she thought that the Union would use its power to negotiate on her behalf "for fair grievance procedures in terms and conditions of her employment." *Id.* ¶ 46.

The origins of Mayes's grievances with her Union are murky. On August 24, 2008, She alleges she was accused of consistent insubordination in a letter authored by Carla Pierce, an Assistant Principal. ECF No. 30-1, at 1. She further alleges that beginning in 2008, certain unspecified persons started rumors amongst staff and students at Suitland High School regarding Mayes's sex life—in particular, to the effect that she was having a homosexual relationship with a school employee. ECF No. 30 ¶ 26. Mayes states that unspecified "salary discrepancies" began

3

in 2008. ECF No. 30 ¶ 26. Mayes says that on June 12, 2009, she had a meeting with Mark Fossett, the Suitland High School principal, and Angela Gaskin-Stewart, the Guidance Chair. ECF No. 30 ¶ 26.  She alleges that Gaskin-Stewart attempted to physically assault her, either at the meeting or at some time prior. ECF No. 30 ¶ 26; ECF No. 30-1, at 1. On September 2, 2010, Mayes had a meeting with Fossett, at which time they apparently discussed sexual harassment that Mayes says she faced, as well as disparities between Mayes's duties and those of other guidance counselors. ECF No. 30 ¶ 26. On September 20, 2010, a student purportedly physically threatened Mayes, causing her to be afraid to work at the school. ECF No. 30 ¶ 26; ECF No. 30-1, at 1. She alleges that no administrative action was taken in response. ECF No. 30-1, at 1.

On September 29, 2010, Mayes emailed a copy of a letter that she planned on submitting to the school to a union representative, Jimalatice Thomas-Gilbert. ECF No. 30-1, at 20. The contents of the letter are unclear, but presumably referenced Mayes's allegations of sexual harassment.[1]

On October 8, 2010, Mayes contacted one of the school's Labor Relations officials in order to determine the procedures for filing a grievance. SAC ¶ 26, ECF No. 30. The Labor Relations official referred Mayes to Pamela Higgins-Harris, an Equity Officer, with whom she could file a complaint. *Id.* Mayes met with Higgins-Harris on October 18, 2010. *Id.* ¶ 15. According to a letter from the Superintendent attached to the Second Amended Complaint, Mayes filed a Discrimination or Harassment Incident Report against an Assistant Principal and three Long Term Substitutes at Suitland High School. ECF No. 30-1, at 17. Mayes's complaint referenced alleged incidents of verbal insults regarding Mayes's sexual orientation. *Id.* Thomas-Gilbert apparently did not attend the meeting due to a scheduling conflict. ECF No. 30-1, at 23-

---

[1] Thomas-Gilbert responded to Mayes's letter, advising her to "[w]ait before you submit it because I want to hear back from Ms. Sessions about possible vacancies. I want to make sure you have some place to go. This letter is going to raise the roof around there." ECF No. 30-1, at 20.

4

34. Mayes alleges that Thomas-Gilbert at some point told Mayes that Thomas-Gilbert "was never to attend [sic] the meeting scheduled for October 18, 2010." *Id.*

A few hours after the October 18 meeting between Mayes and Higgins-Harris ended, Higgins-Harris sent an email addressed to Thomas-Gilbert containing a summary of the meeting. ECF No. 30-1, at 24. Mayes was copied on the email. The email indicated that Higgins-Harris and Mayes had reviewed the history of incidents and events since 2006 that led to Mayes's complaint. Higgins-Harris concluded that two incidents suggested possible violations detrimental to a class, that others suggested the presence of contract issues, and that there might be an overlap between the potential class claims and Mayes's contract claims. Higgins-Harris stated that "[w]e need confer on those points in order to confirm consensus on next steps." ECF No. 30-1, at 24. Higgins-Harris and Thomas-Gilbert proceeded to schedule a meeting for October 27. On October 19, Mayes emailed both Higgins-Harris and Thomas-Gilbert to ask who would be attending the October 27 meeting, and to express other concerns. *Id.* at 26-27. Thomas-Gilbert replied that "only the two of us [presumably meaning Thomas-Gilbert and Higgins-Harris] are meeting to strategize about the best approaches for how to move forward." *Id.* at 27. Higgins-Harris wrote back to clarify that all three would be meeting on October 27, 2010, and Thomas-Gilbert agreed. *Id.*

Mayes alleges that Thomas-Gilbert's October 20 email stating that the sole purpose of Thomas-Gilbert and Higgins-Harris's meeting would be to strategize about the best approaches for how to move forward was "clearly discriminatory, biased, and bad faith conduct by the union representative." SAC ¶ 16, ECF No. 30.

5

On October 27, 2010 Mayes, Thomas-Gilbert, and Higgins-Harris met for over three hours. According to Mayes, Higgins-Harris and Thomas-Gilbert allegedly said at the meeting that Mayes "only [had] a case if [Mayes is] gay." ECF No. 30-1, at 2.

Mayes contends that on November 5, 2010, Thomas-Gilbert met with Fossett and three other school officials. SAC ¶ 46, ECF No. 30. According to Mayes, "what really happened was a consultation instead of a representation." *Id.* According to Mayes, for some 30 months thereafter, from November 5, 2010 until April 2013, Mayes "never received any protection from [the Union]." *Id.* Mayes also alleges that the Union wrongfully refused to "process her grievance," *id.* ¶ 27, without, however, specifying the incidents that the Union supposedly failed to process.

On a separate matter, going back in time, on November 30, 2010 Mayes requested FMLA leave, which the school denied on December 1, 2010. ECF No. 30-1, at 36-37. On December 5, Mayes emailed various school officials and Thomas-Gilbert, pointing out that the FMLA denial notice did not state why her request was being denied. ECF No. 30-1, at 33. On December 8, Thomas-Gilbert replied to Mayes, stating: "You have a right to a formal explanation for the denial. They know what you are trying to do so they are checking with their attorney as to how to formally respond to you." *Id.* at 34.[2]

On December 15, the school issued a revised notice stating that the documentation Mayes's submitted did not support the type of FMLA leave she requested. In particular, "[u]nder

---

[2] Mayes responded to Thomas-Gilbert, indicating that she was "offended" by some comment in an email, and that "[t]hey and YOU have implied that this is not stressful." Her email concluded "HOW MUCH MORE HAS TO HAPPEN BEFORE YOUR OFFICES WILL PROTECT ME! THE ONLY THING LEFT IS TERMINATION AND DEATH." ECF No. 30-2, at 36. Thomas-Gilbert responded, stating, "I am not sure of your last sentence about 'our offices' protecting you. Are you talking about me (PGCEA)? Has PGCPS told you that they are NOT going to provide with a formal explanation[?] I made suggestions to you as to how you should move forward and you told me that moving forward with a formal investigation by the Equity Office was the only option. I informed you that this process will take time and will not provide you with the immediate relief you were seeking with was to be completely removed from Suitland HS." *Id.*

the Family Medical Leave Act guidelines, stress is not considered a qualifying health condition. As such, your request for Family Medical Leave is denied." ECF No. 30-1, at 37.

Mayes alleges that Thomas-Gilbert acted in bad faith in connection with the FMLA denial, particularly in regard to "her decision to arbitrary [sic] decide which emails [Mayes] sent she would respond." ECF No. 30, ¶ 49.

It appears that Mayes went out on sick leave beginning in November 2010. On November 16, 2012, Stacy Evans, the Union sick leave bank coordinator, sent Mayes a notice stating that she would exhaust the 384 days of sick leave available in the sick leave bank on January 17, 2013. The notice further stated that if Mayes's doctor continued to believe that Mayes could not work, Mayes should file for disability retirement. ECF No. 30-2, at 6. Mayes disagreed with the Union's calculation of her sick leave time, insisting she was entitled to 730 days (two calendar years) of sick leave. Evans replied that only workdays counted towards sick leave. *Id.* at 3. On December 4, 2012, Mayes alleges that she attempted to submit a "sick leave bank request" to the Union, but Evans allegedly told her: "I do not need any more bank grants from you." *Id.* ¶ 42.

Mayes submits that, based on this interaction, Evans maliciously misled her to violate the sick leave bank rules, causing her to be placed on Leave Without Pay status. *Id.* Mayes also alleges that, because the Union decided not to "arbitrate" for Mayes, she was placed on Leave Without Pay status. Mayes says she "was denied a hearing which all others similarly situated have enjoyed." *Id.* ¶ 71. It is not clear what arbitration or hearing Mayes contends the Union failed to pursue.

### III.

<u>Standard of Review</u>

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). It requires the plaintiff to articulate facts, which if true, would "show" that the plaintiff has stated a claim entitling him to relief, i.e., the "plausibility of entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

Ordinarily, a plaintiff proceeding *pro se* is held to "less stringent standards" than a lawyer is, and the court must construe her claims liberally, no matter how "inartfully pleaded." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, even a *pro se* complaint must meet a minimum threshold of plausibility. *See O'Neil v. Ponzi*, 394 F. App'x 795, 796 (2d Cir. 2010).

### IV.

Some of Mayes's claims can be summarily dismissed. Her claim for breach of contract (Count I) clearly fails because she has failed to plead that she had a contract with the Union. Arguably, the contract she is alleging was breached might be the Collective Bargaining Agreement which the Union negotiated on her behalf with her employer. However, that would only allow her to sue her employer (the Board), not the Union. *See Anderson v. AT&T Corp.*, 147 F.3d 467 (6th Cir. 1988).

The § 1981 discrimination claim (Count II) fails because she has failed to allege any facts that would make such a claim plausible. To state a cause of action under § 1981, a plaintiff must

show: (1) she is a member of a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities protected by the statute. *Baltimore–Clark v. Kinko's, Inc.*, 270 F. Supp. 2d 695, 699 (D. Md. 2003). The Fourth Circuit requires more than mere conclusory statements of racial discrimination to survive a motion for dismissal in § 1981 cases. *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 344-47 (4th Cir. 2006).

Here, Mayes merely asserts that she was discriminated against by the Union. She alleges that she was "denied a hearing which all others similarly situated have enjoyed." SAC ¶ 71. However, she has failed to allege any specific facts that support her claim that the Union treated her worse than they treated other members, such as names of people similarly situated as she was who received better treatment, what were the circumstances of their grievances, and what treatment they received. Without any specific facts such as these, Mayes's allegations of discrimination are merely conclusory.[3] Nor will it do for Mayes to simply come back at this juncture and allege that all of this supposed discrimination was attributed to race. Mayes has failed to properly plead a § 1981 discrimination claim.

Her § 1983 Due Process claim (Count IV) fails because she has not and cannot allege that the Union was functioning as a state actor. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that the defendant, *while acting under color of state law*, violated a federal right. *Lyles v. Montgomery County, MD*, 162 F. Supp. 2d 402, 405 (D. Md. 2001). Mayes pleads no facts that, if true, in any way suggest that the Union should be viewed as a state actor.

---

[3] The only somewhat specific allegation of discrimination is that the Union failed to protect her from being discriminated against by her employer. However, unions do not have an affirmative duty to prevent discrimination in the workplace. *See EEOC v. Pipefitters Local 597*, 334 F.3d 656, 660-61 (7th Cir. 2003).

She submits that since her complaint alleges "a number of occurrence [sic] and interactions involving faculty members of PGCPS, and members of [the Union] acting on behalf of the Defendants [sic], that clearly allege [sic] a degree of notice on the part of school officials and union officials of some kind of relationship between Plaintiff [sic]." Opposition at 11, ECF No. 33. The exact import of this argument is unclear. Liberally construed, perhaps she means to suggest that, based on the interaction between the Union and the Board, the Court should deem the Union as a state actor just like the Board. But if this is what Mayes is trying to say, it is totally lacking in requisite plausibility. She has failed to state a claim for a § 1983 Due Process claim because she has failed to allege that the Union was acting under the color of state law with respect to her grievance.

Mayes's claim for breach of duty of fair representation (Count IV) is likewise fatally flawed.

A union's handling of a grievance is ordinarily given great deference. *Hypes v. Cyprus Kanawha Corp.*, 40 F.3d 1244 (4th Cir. 1994). A union breaches its duty of fair representation only if its conduct in handling the grievance is "arbitrary, discriminatory, or in bad faith." *Id.* Mayes has failed to plead any facts that suggest that the Union's decision not to pursue her grievance may be characterized thus.

For example, she alleges that Thomas-Gilbert's October 20 email stating that only Thomas-Gilbert and Higgins-Harris would be meeting to strategize about the best approaches for how to move forward is "clearly discriminatory, biased, and bad faith conduct by the union representative." ECF No. 30, ¶ 16. That statement is totally meaningless with respect to the supposed arbitrariness, discrimination, and bad faith. At best, Mayes's allegations that the Union discriminated against her are conclusory and insufficient as a matter of law.

10

Similarly, Mayes fares no better in attempts to establish a course of action based on the fact that Evans, the Sick Leave Bank Coordinator, may have told her she did not need any more bank grants from Mayes. It is conclusory and insufficient as a matter of law to simply say that Evans "maliciously misled her to violate the sick leave bank rules, causing her to be placed on Leave Without Pay status." *Id.* ¶ 42. Nowhere does Mayes state any facts about that incident which plausibly suggest that Evans maliciously misled her in any respect.

The same is true as to Mayes's allegations that the Union wrongfully refused to "process her grievance." *Id.* ¶ 27. In the first place, it is not even clear what grievance, related to which incidents, the Union supposedly failed to process. To assert generally that similarly situated employees were given better representation and received hearings or better treatment because they were more "politically connected" is once again merely conclusory. Mayes has not alleged facts indicating specifically which other similar employees she is referring to, what their grievances were, and how and why those grievances were handled differently from those of Mayes.

In sum: all of Mayes's allegations of discrimination by the Union are not only implausible, they are conclusory. Mayes has failed to plead a claim for breach of duty of fair representation against the Union.

Finally and most importantly, even if Mayes satisfied the pleading requirements, her claim would be barred by the statute of limitations. As a public education employee, Mayes is not subject to the National Labor Relations Act ("NLRA"), which authorizes private employees to obtain representation. *See* 29 U.S.C. § 152(2). Therefore, her claim for breach of duty of fair representation is only viable under Maryland state law. *See* Md. Code Ann., Educ. § 6-401, -407(b)(1). It has been held that the statute of limitations for a breach of duty of fair

representation claim under Maryland state law originating in Montgomery County is six months. *Fontell v. McGEO UFCW Local 1994*, 2010 WL 3086498 at *10 (D. Md. 2010). The Union argues that, based on the reasoning of *Fontell*, a claim under Maryland state law for breach of duty of fair representation originating in Prince George's County, which has a statute of limitations of thirty days for an analogous state law, has a thirty day period within which the claim must be brought. The Court is inclined to agree.

The reasoning of the *Fontell* court was that since there is no explicit statute of limitations for a claim of breach of duty of fair representation under Maryland state law, the courts must apply "the most closely analogous statute of limitations under state law." *Id.* (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 158 (1983)). *Fontell* held that the statute of limitations set forth in the Collective Bargaining Law of the Montgomery County Code, which governed the plaintiff's fair representation claims there, was the most analogous and proper one to apply. *Id.* Accordingly, the court applied the six month statute of limitations that the Montgomery County Code provided to the state claim of breach of duty of fair representation. *Id.*

The Union argues that here the most analogous statute of limitations under state law is the Prince George's County Code's thirty day limit for an aggrieved public employee to appeal the decision of the Personnel Board regarding his/her grievance. *See* Prince George's County, Md., Code of Ordinances § 16-200, *et. seq.* (2011). Therefore, based on the reasoning of *Fontell*, the statute of limitations here for Mayes's analogous state claim should be thirty days.

In response, Mayes appears to argue that the statute of limitations for attorney malpractice claims, i.e. three years, should apply because of the similarity between representation by a union and representation by an attorney. This argument is unpersuasive. There is a valid policy reason to require much shorter periods for claims to be made against

12

unions, consisting— as they do— of a great number of members, every one of whom is prepared every day to insist upon his or her right to fair representation. An attorney may be subject to a malpractice claim once or twice in an entire career, if that. But if fair representation claims against a union could accumulate for three years, as opposed to thirty days or six months, the unions might well drown in an ocean of claims.

Accordingly: Based on either a six month limitation period, as in *Fontell*, or a thirty day limitation period as the Union argues applies here, Mayes's claim is time-barred. More than seven months elapsed from the date of latest wrongdoing Mayes asserts in her complaint, i.e. April 2013, before suit was filed in this court, i.e. December 2013.

Thus, even if the Court were to find that Mayes's claim for breach of duty of fair representation was plausible— and it does not— the claim would still be time-barred.

Since all of Mayes's claims are meritless, her request for a preliminary injunction is moot.

### IV.

For the foregoing reasons, the Court **GRANTS WITH PREJUDICE** the Union's Motion to Dismiss. ECF No. 31.

A separate Order will **ISSUE**.

/s/
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

July 31, 2015

13